IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYSHAWN DONTAY SMITH,<br><br>                      Petitioner,<br><br>       vs.<br><br>W.L. MONTGOMERY, Warden, Calipatria State Prison,<br><br>                      Respondent. | No. 2:14-cv-02468-JKS<br><br>MEMORANDUM DECISION |

Rayshawn Dontay Smith, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Smith is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Calipatria State Prison. Respondent has answered, and Smith has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On June 3, 2011, Smith was charged with attempted robbery (Count 1); four counts of robbery (Counts 2, 3, 4, 5); unlawful possession of a loaded, concealable firearm (Count 6); and resisting an officer (Count 7). The information further alleged as to Counts 1, 4, and 5 that Smith personally used a handgun in commission of the offenses. On direct appeal of his conviction, the California Court of Appeal recounted the following facts underlying the charges against Smith and the evidence presented at trial:

> On December 30, 2010, just before 1:00 p.m., someone knocked on Danielle Davis's apartment door. Thinking it was her ride, she opened the door to find [Smith], who pushed his way in and asked if Eric was there. [Smith's] hair was in dreadlocks and he wore a distinctive looking jacket. He put a gun to the back of Davis's head and told her to show him where the money was or he would blow her head off.

Davis walked into her bedroom; [Smith] followed and dumped out the contents of her purse. He opened her makeup bag and looked for money. Finding none, [Smith] told Davis, "Have a nice day," and left the apartment.

Davis called the police after [Smith] left. She identified [Smith] as the perpetrator in a photographic lineup and at trial. She also identified a photograph of [Smith's] handgun as the weapon used in the crime. [Smith's] fingerprint was found inside Davis's makeup bag.

On December 30, 2010, Vincente Tafolla stopped at a market on his way home to buy sodas and beer. As he talked to a man before entering the store, two men approached. One of the men pulled out a gun and demanded Tafolla's wallet, threatening to kill him if he moved. The other man, whose long hair was in "braids," took Tafolla's wallet, which had about $30 to $40, identification, and credit cards. As the two men left, Tafolla noted one of them wore a distinctive jacket. At trial, he identified a jacket belonging to [Smith] as looking like the one worn by one of the robbers.

Later that day, at around 9:00 p.m., Evan Xiong and his friend Jimmy were sitting in Jimmy's car, which was parked in front of Xiong's apartment. A red Kia pulled up behind them; a man got out of the Kia and ran toward a nearby liquor store while keeping his hands under his shirt. Suspicious, Xiong wrote down the Kia's license plate number. A few minutes later, Xiong got out of Jimmy's car and Jimmy drove off.

Xiong saw the man from the Kia and another man running from the liquor store with their hands under their shirts. One man got in the Kia and started it. The other man ran up to Xiong, put a gun in his face, and threatened to kill him if he did not give up his wallet. Xiong gave up his wallet, which contained $150 and other items. The robber then got into the Kia, which drove off.

Xiong told police the man who robbed him wore a beanie, was slim, tall, had a gold "grill" on his teeth, and used a revolver. Xiong gave the police the license plate number of the Kia, but could not identify any suspects at a field showup. At trial, Xiong identified a photograph of [Smith's] gun as being similar to the one used by the robber.

On January 2, 2011, at around 6:00 p.m., Sasha Divens, who was seven months pregnant, was driving down Center Parkway with her friend Manalina Hilbert. When the car ran out of gas, Divens tried to call her husband, opening the door slightly to activate the interior light. As Divens contacted her husband, she was met by [Smith] and another man. [Smith] had shoulder length dreadlocks and wore a distinctive jacket. He pointed a gun at her head while the other man demanded money.

When Divens responded that she had no money, the other man took the gun from [Smith], went to the other side of the car, and confronted Hilbert. The man grabbed Hilbert from the car and went through her pockets, taking about $500 and her car keys. [Smith] sat on Divens's lap and went through her pockets, taking her identification and between $400 to $500. When the robbers were leaving, [Smith] returned Divens's identification and the other man threw back Hilbert's keys. Divens identified [Smith] in a photographic lineup, and identified his jacket and a photograph of the gun he used. Hilbert looked at a photographic lineup and thought [Smith's] picture looked like one of the robbers.

Detectives determined that [Smith's] girlfriend, Andrea Harris, owned the Kia used in the Xiong robbery. [Smith] was contacted at his apartment, which was about a half-mile from the Tafolla robbery, one and one-half to two miles from the Divens and Hilbert robberies, and 200 to 300 yards from the attempted robbery of Davis. A search of [Smith] found a loaded .38–caliber revolver in his pocket. He was not the registered owner of the gun. The distinctive jacket identified at trial was found in his car.

Dr. Scott Fraser, an expert on eyewitness testimony, testified for the defense that dimmer lighting reduces a person's ability to see details. The lighting in Divens's car was dim and the robber's face was in the shadows, making it more difficult to see his features. The difficulty of an accurate identification rises with the number of people in an incident. High stress situations, like being in the presence of a weapon, reduces the accuracy of identification.

On the last day of prosecution testimony, the prosecutor informed the trial court he wished to introduce portions of a jailhouse phone call between [Smith] and his girlfriend referring to efforts to get a witness to change her testimony. Defense counsel objected to admitting the phone call. The trial court overruled the objection, finding the evidence was probative of [Smith's] state of mind.

The audiotape of the February 16, 2011, phone call was played to the jury. [Smith], talking to his girlfriend about a notarized letter, asks her to, "handle that for me, and then I come home. Cause, the, the other one they talkin' 'bout with the, ah, with the pregnant lady?" [Smith] continues, "They, they in statements you can tell, they don't know, you know, it look like him and all type of shit. You can tell that's, that ain't go——, that's gonna fold. But this one, you know, it's more, you know——[.]"

After the girlfriend replies, "Yeah," [Smith] says: "—— So baby, I really need you to handle that for me, you know? Whatever, you know, car, money, you know, but just ask first, just see where her head is first and then—[¶]—you know, he got a son, you know it a mis—woo, woo, woo, you gonna know what to say. So, I put everything on there with on, on how to network it and, you know, and it's 585, you know what I mean by that?" [Smith's] girlfriend asked what 585 meant, and [Smith] told her, "The apartment number." The girlfriend then told [Smith] the police already told her what apartment it was and she told them she had never been there.

Later, [Smith] said, "So that, you know, so I really need, need, need y'all to really network that for me, okay baby?" When the girlfriend replied, "Okay," [Smith] told her, "You know that I really don't wanna ah, really talk over the phone about, what, what's going on, so, you know that, I'm glad you received a letter and I was basically letting you know, you know, what to do, okay?" [Smith's] girlfriend replied, "Okay, we don't have to talk about this no more." [Smith] said it was good that she understood, and the call ended.

The prosecutor recalled Davis after the tape was played. She testified to receiving a call in March from a person named Scooter who claimed to be [Smith's] mother. Prior to the call, Davis had learned that Scooter was the name of [Smith's] mother. After the trial court instructed the jury that this testimony was "not being offered for the truth of the matter asserted," Davis testified that this woman said she was willing to pay Davis to

3

> change her story. She also told Davis that [Smith] had a son, and if he was in jail she would have to raise the boy. Davis declined the offer.
>
> In April, shortly after Davis's birthday, two women knocked on Davis's door. One woman identified herself as [Smith]'s cousin and the other as [Smith]'s girlfriend. The cousin told Davis [Smith]'s aunt would pay her to change her story. Davis declined this offer as well.

*People v. Smith*, No. C070118, 2013 WL 6171617, at *1-3 (Cal. Ct. App. Nov. 26, 2013).

At the conclusion of trial, the jury found Smith guilty on Counts 1 through 6 and returned a not guilty verdict on Count 7. The jury also found true the handgun allegations attached to Counts 1 and 4 but found not true the handgun allegation attached to Count 5. The trial court subsequently sentenced Smith to an aggregate imprisonment term of 20 years and 8 months.

Through counsel, Smith appealed his conviction on the ground that the trial court erred by allowing the prosecution to present irrelevant and unduly prejudicial evidence of alleged attempts by third parties to influence Davis's testimony. According to Smith, the testimony was inadmissible hearsay, there was an insufficient nexus between it and the recorded jail call, and the testimony violated his right to confrontation. The Court of Appeal unanimously affirmed the judgment against Smith in a reasoned, unpublished decision issued on November 26, 2013. *Smith*, 2013 WL 6171617, at *4. Smith petitioned for review in the California Supreme Court, which was summarily denied on January 29, 2014.

Proceeding *pro se*, Smith then filed in the Supreme Court a petition for habeas corpus claiming that, because the third-party tampering evidence pertained only to Count 1, trial counsel was ineffective for failing to object to and request a limiting instruction with respect to the other counts. The Supreme Court denied the habeas petition without comment on May 20, 2015.

While his state habeas petition was pending, Smith timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on October 16, 2014. *See* 28 U.S.C. § 2244(d)(1)(A).

4

Smith subsequently filed an Amended Petition ("Petition," Docket No. 12), which is now before the undersigned judge for adjudication.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Smith raises two claims. First, he argues that the trial court erred by allowing the prosecution to present prejudicial evidence of alleged third-party attempts to influence the testimony of a witness. He additionally argues that trial counsel was ineffective for failing to object to and request a limiting instruction with respect to that evidence for the Counts to which the evidence did not pertain. Smith also seeks other forms of relief, including an evidentiary hearing, an order allowing him to conduct discovery, and the appointment of counsel.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

5

relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

*Hearsay/Confrontation Claim* (Ground 1)

Smith first argues that the admission of Davis's testimony on attempts to influence her was prejudicial error because the testimony was inadmissible hearsay, the admission of which violated his right to confrontation. The Court of Appeal considered and rejected this claim on direct appeal as follows:

> [Smith] asserts Davis's testimony regarding the two offers to change her testimony was relevant only if the jury considered the out-of-court statements from [Smith's] mother and cousin asking Davis to change her testimony for the truth of what was said in them. Since there was no hearsay exception under which these statements could be admitted, [Smith] claims they were wrongly admitted by the trial court.
> A statement constitutes hearsay if it was made other than by a witness while testifying at trial and is offered to prove the truth of the matter stated. Hearsay evidence is inadmissible unless it falls within one of the exceptions to the rule. (EVID. CODE, § 1200, subds.(a), (b).)
> Requests and words of direction typically are not hearsay. (*People v. Jurado* (2006) 38 Cal.4th 72, 117 ["Because a request, by itself, does not assert the truth of any fact, it cannot be offered to prove the truth of the matter stated"]; *People v. Reyes* (1976) 62 Cal. App. 3d 53, 67, *quoted with approval in Jurado*, at p. 117 ["A declarant's words of direction or authorization do not constitute hearsay since they are not offered to prove the truth of any matter asserted by such words"].) One exception is if the request includes implied hearsay, that is "'if such evidence is offered to prove—not the truth of the matter that is stated in such statement expressly—but the truth of a matter that is stated in such statement by implication.' [Citation.]" (*People v. Garcia* (2008) 168 Cal. App. 4th 261, 289.)
> The alleged hearsay statements are requests from the declarants for Davis to change her testimony. They are offered not for the truth of the matters asserted, that Davis would get paid if she changed her story. Instead, they are admissible as circumstantial evidence that [Smith] wanted Davis to change her story, and therefore change her testimony, to a version that would exculpate him. [Smith's] efforts to get Davis to change her testimony are admissible for the nonhearsay purpose of proving his guilty state of mind.
> [Smith's] claim that there is an insufficient nexus between the third party efforts to influence testimony and the taped jail call is likewise misplaced.
> """Generally, evidence of the attempt of third persons to suppress testimony is inadmissible against a defendant where the effort did not occur in his presence. [Citation.] However, if the defendant has authorized the attempt of the third person to suppress testimony, evidence of such conduct is admissible against the

7

> defendant.'"'[Citations.]" (*People v. Williams* (1997) 16 Cal. 4th 153, 200.) [Smith] claims that since there is not even the suggestion that [Smith] had the "'mere opportunity'" to tell his mother and cousin to influence Davis, the People did not establish adequate foundation for Davis's testimony.
>
> The phone call shows [Smith] wanted his girlfriend to get the person in the apartment to change her testimony. Since the attempted robbery of Davis was the only charged crime taking place in an apartment, [Smith]'s request referred only to influencing Davis's testimony. [Smith] did not expect his girlfriend to do this alone; he told her to "network it." In March, after the February 16 phone call, [Smith]'s mother called in an attempt to influence Davis's testimony. [Smith]'s cousin and girlfriend came to Davis's apartment the following month and tried to get Davis to change her testimony. The evidence shows the girlfriend followed [Smith]'s instructions and networked, getting [Smith]'s family members to help her efforts to change Davis's testimony. This circumstantial evidence provides a sufficient nexus to admit Davis's testimony as evidence of [Smith]'s efforts to change her testimony about his crime.
>
> [Smith]'s right to confrontation claim merits little consideration. The right to confrontation is violated only when the admitted out-of-court statement is testimonial. (*People v. Geier* (2007) 41 Cal. 4th 555, 597.) The offers for Davis to change her testimony are not testimonial, so their admission does not implicate the right to confrontation.

*Smith*, 2013 WL 6171617, at *3-4.

Smith fares no better on federal habeas review. To the extent that Smith's claim is based upon an alleged violation of California Evidence Code § 1200 or challenges the state court's finding of a sufficient nexus between the third party efforts to influence testimony and the taped jail call, such state-law claims are not cognizable on federal habeas review. Whether a statement constitutes hearsay is a question of state law that this court may not revisit. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *cf. Lilly v. Virginia*, 527 U.S. 116, 125 (1999) (plurality opinion) (whether statements qualified as statements against penal interest for purposes of state hearsay rule is a "matter of state law").

Moreover, Smith cannot show that the state court's ruling was contrary to, or an unreasonable application of, clearly established federal law. Smith appears to argue that the admission violated his due process rights because the testimony was not sufficiently relevant to

8

outweigh its prejudicial impact.  But as laid out in that court's thorough analysis of this claim, the Court of Appeal reasonably concluded otherwise.  *See Estelle*, 502 U.S. at 70 (holding that, as a general matter, the admission of evidence "relevant to an issue in the case" does not violate due process).  Indeed, even if the state court's conclusion was incorrect, such erroneous conclusion would still not warrant relief as the United States Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation."  *Holley*, 568 F.3d at 1101; *see Carey v. Musladin*, 549 U.S. 70, 76 (2006) (where Supreme Court precedent gives no clear answer to question presented, "it cannot be said that the state court 'unreasonab[ly] appli[ed] clearly established Federal law'").

Nor can Smith show that the admission violated his right to confrontation.  The Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides in part that, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. CONST. amend. VI.  However, the Confrontation Clause applies only to "testimonial" statements, which generally refers to "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *See Crawford v. Washington*, 541 U.S. 36, 50-51 (2004).  Although the Supreme Court has not articulated a comprehensive definition of testimonial hearsay, it has concluded that informal statements to friends, neighbors, and acquaintances are not testimonial.  *See Giles v. California*, 554 U.S. 353, 376 (2008); *Crawford*, 541 U.S. at 51 (Confrontation Clause addresses formal statements of a declarant to government officers because that person "bears testimony in a sense that a person who makes a casual remark to an acquaintance does not"); *see also Delgadillo v. Woodford*, 527 F.3d 919, 927 (9th Cir. 2008) (finding that "the state court's implicit conclusion

9

that [the victim's] remarks to her coworkers did not implicate [the petitioner's] Sixth Amendment rights of confrontation" was not contrary to, nor an unreasonable application of, *Crawford*). Because the record supports the state court's conclusion that the statements at issue were not procured as an "out-of-court substitute for trial testimony," *see Michigan v. Bryant*, 562 U.S. 344, 358 (2011), the Court of Appeal's determination that the statements were not testimonial was objectively reasonable, *see Giles*, 544 U.S. at 376. Thus, the admission of Davis's testimony did not implicate Smith's right to confrontation, and Smith cannot show either a confrontation or due process violation.

<u>*Ineffective Assistance of Counsel* (Ground 2)</u>

Smith next contends that trial counsel was ineffective for failing to object to, and request a limiting instruction with respect to, the third-party tampering evidence as to Counts 2 through 7. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht*

10

harmlessness standard.[1] *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Smith must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

The record here does not support Smith's contention that trial counsel was ineffective. Smith alleges that trial counsel should have requested a limiting jury instruction that the evidence of third-party attempts to influence Davis's testimony only applied to Count 1. However, the jury instruction, CALCRIM No. 371, specifically noted in the title that it was

---

[1] *See Brecht v. Abrahamson*, 507 U.S. 619, 639 (1993) (instructing that, where the standard applies, habeas relief is not warranted unless the error "had [a] substantial and injurious effect or influence in determining the jury's verdict").

limited to Count 1.[2] Moreover, the record reflects that, during summation, trial counsel further clarified to the jury that the evidence only applied to Count 1:

> I saved Danielle Davis for last. And the reason I saved her for last is because I want to address everything else first because imagine if you're charged with all this, imagine how prejudicial it would be to your case if you didn't commit all these other robberies but yet you're confronting the accusations from Miss Davis. Remember, I—in jury selection I said again and again that one of my greatest fears here is that you're going to lump everything together into one thing and you're just going to treat it that way.
> I'm asking you to analyze the count with Miss Davis just based on the evidence regarding that count.

Here, the evidence was admitted over defense counsel's objection, and counsel attempted to downplay the evidence and ensure that the jury applied it only with respect to Count 1. Because the instruction indicated that the evidence applied solely to Count 1, which was also clarified by defense counsel during closing argument, Smith fails to show that counsel was deficient in failing to seek a limiting instruction or that a limiting instruction would have led to a different result. Smith is therefore not entitled to relief on his ineffective assistance claim either.

---

[2] The title of that instruction stated, "371. Consciousness of Guilt: Suppression and Fabrication of Evidence (Count One)."

*Other Requests for Relief*

Finally, Smith seeks an order allowing him to conduct discovery in this case, an evidentiary hearing, and the appointment of counsel.

Rule 6 of the Rules Governing Section 2254 Cases ("Rule 6") governs discovery in this matter. Rule 6 provides:

> (a) Leave of court required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.
>
> (b) Requesting discovery. A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

"[A] district court abuse[s] its discretion in not ordering Rule 6(a) discovery when discovery [i]s 'essential' for the habeas petitioner to 'develop fully' his underlying claim." *Dung The Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005) (quoting *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997)). However, courts should not allow a petitioner to "use federal discovery for fishing expeditions to investigate mere speculation." *Calderon v. United States Dist. Ct. for the N. Dist. of Cal.* (*Nicolaus*), 98 F.3d 1102, 1106 (9th Cir. 1996); *see also Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999) (habeas corpus is not a fishing expedition for petitioners to "explore their case in search of its existence") (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

The good cause requirement of Rule 6 is satisfied where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09. The good cause standard set forth by Rule 6 is similar to the standard that governs whether or not a habeas

13

petitioner is entitled to an evidentiary hearing: "in deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *See, e.g.*, *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (discussing evidentiary hearing standard); *see also Jones v. Wood*, 114 F.3d 1002, 1008-09 (9th Cir. 1997) (where petitioner satisfied the standard for obtaining an evidentiary hearing on certain claims, district court abused its discretion by denying discovery request pertaining to such claims). Once a petitioner has demonstrated good cause to conduct discovery, the discovery provisions contained in the Federal Rules of Civil Procedure apply. Rule 6 of the Rules Governing Section 2254 Cases; *Bracy*, 520 U.S. at 904.

Section 2254(e)(2) of AEDPA bars most evidentiary hearings if the applicant "failed" to develop the factual basis for the claim in state court. In this context, "failed" "connotes some omission, fault, or negligence on the part of the person who has failed to do something." *Williams*, 529 U.S. at 431-32. "Under § 2254(e)(2), a petitioner who failed to develop the facts of the claim in state court may not obtain a hearing in federal court except in limited circumstances." *See, e.g.*, *Atwood v. Schriro*, 489 F. Supp. 2d 982, 1007 (D. Ariz. 2007). If the court determines that the applicant failed to develop the factual basis for a claim in state court, the district court can hold an evidentiary hearing only if the petitioner meets two demanding requirements: (1) the allegations, if proven, would entitle the petitioner to relief; and (2) the state court trier of fact has not reliably found the relevant facts. *Rich*, 187 F.3d at 1068. A habeas petitioner who has failed to develop a factual basis for his claims in state court and requests an evidentiary hearing before a federal district court must demonstrate that "the claim relies on . . . a

factual predicate that could not have been previously discovered through the exercise of diligence and . . . the facts underlying the claim would . . . establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

Smith fails to demonstrate good cause here and is not entitled to discovery or an evidentiary hearing in this matter. As discussed above, federal habeas claims are analyzed under the framework of the AEDPA, 28 U.S.C. § 2254. In *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011), the Supreme Court held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." This effectively precludes federal evidentiary hearings for such claims because the evidence adduced during habeas proceedings in federal court could not be considered in evaluating whether the claim meets the requirements of § 2254(d). *See id.* at 187 n.11 ("[Petitioner] has failed to show that the [state court] unreasonably applied clearly established federal law on the record before that court, which brings our analysis to an end.") (internal citations omitted). In *Runningeagle v. Ryan*, 686 F.3d 758, 773-74 (9th Cir. 2012), the Ninth Circuit explained that *Pinholster* governs discovery, expansion of the record and evidentiary hearings. Thus, *Pinholster* bars a habeas court from any further factual development unless the court first determines that the state court made an unreasonable application of federal law or made an unreasonable determination of facts based on the record before it. *Pinholster*, 563 U.S. at 202 n.20. As discussed throughout this opinion, Smith has failed to make a threshold showing that the state court made an unreasonable application of federal law or made an unreasonable determination of facts based on the record before it.

Nor can Smith show that he is entitled to the appointment of counsel.  While this Court is not unmindful of the plight of unrepresented state prisoners in federal habeas proceedings, there is no constitutional right to counsel in federal habeas proceedings.  *See Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (citing *Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991)).  Appointment of counsel is not required in a habeas corpus proceeding in the absence of an order granting discovery or an evidentiary hearing.  *See* Rules Governing Section 2254 Cases in the U.S. District Courts, Rule 6(a), 8(c).  This Court may under the Criminal Justice Act appoint counsel in this case if it determines that the interests of justice so require.  28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B); *see Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) ("In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.").  Because this case has been fully briefed, and the Court has now considered and adjudicated it on the merits and determined that no Certificate of Appealability should be granted, this Court does not so determine.  Smith's request for counsel must therefore also be denied.

## V. CONCLUSION AND ORDER

Smith is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** Smith's requests to conduct discovery in this case and for an evidentiary hearing and the appointment of counsel are **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: December 6, 2017.

                                              /s/James K. Singleton, Jr.
                                              JAMES K. SINGLETON, JR.
                                              Senior United States District Judge